UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KARL ANTHONY DiLORENZO,

                Petitioner,

    v.

DEPARTMENT OF CORRECTIONS,

                Respondent.

Case No. C20-0445-RAJ-MAT

REPORT AND RECOMMENDATION

INTRODUCTION AND SUMMARY CONCLUSION

This is a federal habeas action filed under 28 U.S.C. § 2254.  Petitioner Karl DiLorenzo seeks to challenge in this action his 2004 Whatcom County Superior Court judgment and sentence. Though petitioner is no longer in physical custody with respect to the judgment he seeks to challenge, he remains under the supervision of the Washington Department of Corrections on community custody.  Respondent filed an answer to petitioner's federal habeas petition together with relevant portions of the state court record, and petitioner filed a response to respondent's answer.  This Court, having reviewed the submissions of the parties, concludes that this federal habeas action should be dismissed with prejudice.

/ / /

REPORT AND RECOMMENDATION
PAGE - 1

# FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's convictions as follows:

> Defendant Karl A. Dilorenzo was charged with seven counts of child molestation and child rape for incidents involving his two daughters, D and T, between January of 1997 and November 5, 2002. The charges were based on information given to police and counselors by D and T in March 2003. Dilorenzo denied the acts.
>
> . . . .
>
> During trial, D and T each testified about numerous acts of child sexual molestation and child rape, the details of which we need not recount here. We simply observe that the testimony was substantial and more than sufficient to support the charges if believed by the jury.
>
> D, the youngest daughter, was the first to report [the] abuse to anyone. When D was in 10th grade she told her boyfriend about the abuse. Her boyfriend encouraged her to tell someone else about it. D told her school counselor about the abuse in March 2003. D said that she finally revealed the abuse, despite Dilorenzo's threats that she and T would be separated if she did so, because T was now out of the home and D was ready, with her boyfriend's encouragement, to reveal the incidents. D stated that she also told a police officer, Mel Bankers, about the incidents, after she told the school counselor.
>
> On cross-examination, D admitted that she could have told other people about the incidents before March 2003, and that she understood from school the difference between good and bad touching. D also admitted that she never told her doctor, T, the ladies at her church, or any of the other mother figures in her life about the abuse.
>
> When asked about Dilorenzo's girlfriend, [Levinia] Fromme, D stated that although Fromme was strict, D liked her a lot. She said that no incidents of abuse would occur when Fromme spent the night at their house. During this questioning, Dilorenzo's counsel requested a sidebar and the jury was excused while Dilorenzo's attorney questioned D about the alleged theft of money from Fromme by D in 2001. D answered that her friend had stolen the money and used it to buy marijuana. D stated that neither Fromme nor her father was mad at her, because she had told the truth, and that Fromme forgave her. The court ruled that it would allow further cross-examination on D's relationship with Fromme, but not about the specific facts of the alleged theft and marijuana incident.
>
> When the jury reconvened, D admitted that at some point her relationship

with Fromme became a bit strained.  D admitted that Fromme was stricter than Dilorenzo, that both she and T believed that Fromme became more controlling in the family, and that Fromme was living more and more in their home.  D asserted that her relationship with Fromme was not the reason she reported the abuse, and denied that her relationship with Fromme changed after Fromme became ill with cancer.

After another sidebar discussion, the court also allowed Dilorenzo to have D read from three handcrafted Christmas and Father's Day cards.  The cards expressed D's love for and thanks for her father.  D testified that she still loved her father and always would, but that she did not like what he was doing to her.

T also testified at trial and described similar incidents of sexual abuse to those described by D.  T testified that Dilorenzo also engaged in two incidents of oral sex with her.  T said that she did not report the abuse until after D reported it because she thought that her sister would be taken from her.  T said that she never suspected anything was happening between D and their father.  T stated that she thought that since the abuse was happening to her, it would not happen to D.  T admitted that her relationship with Fromme was not particularly close, and was sometimes tense, but stated that she never had any indication that the relationship between Fromme and D was strained.  T denied that her relationship with Fromme changed after Fromme became ill and was unable to spend money on her.

Detective Lee Beld testified that he contacted Dilorenzo after D and T made their reports, and that Dilorenzo came to the police station with Fromme.  When Dilorenzo was confronted with his daughters' accusations, Detective Beld said that Dilorenzo stated that his daughters did not lie.  But Detective Beld also stated that Dilorenzo angrily denied touching either of his daughters inappropriately, and that Dilorenzo said he could not believe his daughters' accusations.  When confronted with his prior statement that his daughters did not lie, Detective Beld stated that Dilorenzo buried his face into his crossed arms on the table and began to cry.  Detective Beld quoted him as saying "if she said that I did this, then I must be a fucking pervert."  2 Report of Proceedings at 290-92.

Detective Beld testified that he then told Dilorenzo about T's accusations of oral sex, and Dilorenzo denied having engaged in any type of sexual behavior with his daughters.  When again confronted with his prior assertion that his daughters did not lie, Dilorenzo again cried and said, "I can't believe I did that.  If she said that [I] did, then it must be or I must be a sick bastard."  1 Report of Proceedings at 298-300.

Detective Beld stated that Dilorenzo began explaining the allegations described by his daughters as the result of sleeping pills he took, and that he claimed that T and D engaged in the alleged activities while he was asleep.  Dilorenzo later told Detective Beld that the only way any of these things could happen was if he

REPORT AND RECOMMENDATION
PAGE - 3

were asleep, because his daughters were not liars.  Dilorenzo also told Detective Beld that he often sleepwalked.  Detective Beld said that Dilorenzo said many times, in a matter of fact manner, that if he had done the alleged acts he must be a pervert.

Fromme testified that her relationship with Dilorenzo and his daughters was quite nice during the first two years she knew them, but that the relationship changed when she got breast cancer.  Fromme said she believed that this was because she was no longer able to spend time or money on the girls.  She stated that she was increasingly at the Dilorenzo home during her illness and that there was tension in the home.

Fromme also testified about an incident between her and D when she had caught D lying, and that she felt the relationship between D and her father had gone sour.  Fromme testified that her own relationship with D was also affected negatively by the incident, and that she considered leaving Dilorenzo.  Fromme and other witnesses variously testified regarding the freedom D and T had in the household, and their ability to have friends visit or to visit friends.

Dilorenzo testified in his own behalf, categorically denying any inappropriate touching or other sexual contact with his daughters.  Dilorenzo stated that he was very open with his girls about matters of sex, contraception, and personal hygiene, and had explained to his girls how to use feminine products.  Dilorenzo admitted that he told Detective Beld that the only way he could have done the things that the girls described was if he were asleep.  He later stated that his comments to Detective Beld that he was a pervert were questioning comments, not assertions, and that the detective had misunderstood him.  Dilorenzo testified that he now believed that the girls had fabricated the incidents.

Dilorenzo confirmed that Fromme's relationship with his daughters was good when he first started dating her in 1999, but that it changed after a few years when Fromme became sick and no longer able to buy his daughters gifts.  Dilorenzo stated that his daughters became angry that he spent so much time with Fromme and because they had to help out around the house.  Dilorenzo stated that Fromme's relationship with the girls soured, and that his relationship with Fromme also went badly.

Dilorenzo was convicted by the jury of all seven counts of child molestation and child rape as charged.

(Dkt. 12, Ex. 10 at 1-7 (footnote omitted).)

///

REPORT AND RECOMMENDATION
PAGE - 4

PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals, and the Court of Appeals issued an unpublished opinion affirming the convictions on May 16, 2005. (*See id.*, Exs. 7-10.) Petitioner did not seek further review by the Washington Supreme Court, and the Court of Appeals issued a mandate terminating direct review on July 22, 2005. (*Id.*, Ex. 11.)

On March 8, 2017, petitioner filed a personal restraint petition in the Washington Court of Appeals, asserting a single ground for relief; *i.e.*, that his defense attorney provided ineffective assistance by failing to investigate possible defenses. (*Id.*, Ex. 12.) On April 14, 2017, the acting chief judge of the Court of Appeals issued an order dismissing the petition as time-barred. (*Id.*, Ex. 13.) Petitioner thereafter sought review in the Washington Supreme Court, and the Supreme Court commissioner issued a ruling denying review on September 25, 2017. (*See id.*, Exs. 16, 20.) The Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on December 8, 2017. (*See id.*, Ex. 21.)

On March 11, 2020, petitioner filed a document in the Washington Court of Appeals which he identified as a motion to "Enforce Judgment and Sentence, and Order a Permanent, and a Temporary Order Cease [and] Disist [sic] Order." (*See id.*, Exs. 22, 24, 25.) Petitioner sought therein to challenge his community custody. (*See id.*, Exs. 24, 25.) The Court of Appeals treated petitioner's submission as a personal restraint petition, and the acting chief judge issued an order dismissing the petition on April 28, 2020. (*See id.*, Exs. 22, 25.) Petitioner thereafter sought review in the Washington Supreme Court, and the Supreme Court commissioner issued a ruling denying review on June 12, 2020. (*Id.*, Exs. 23-25.)

Petitioner now seeks federal habeas review of his convictions. Petitioner submitted his original federal habeas petition to the Court for filing on March 23, 2020. (*See* Dkt. 1.) The Court

REPORT AND RECOMMENDATION
PAGE - 5

declined to serve the petition because petitioner failed to demonstrate therein that he was "in custody" for purposes of challenging the convictions at issue here. (Dkt. 5.) The Court also noted in its Order declining to serve the petition that if petitioner were able to demonstrate he was in custody for purposes of challenging his convictions, he would also need to demonstrate that his petition was timely. (*Id.*)

On April 9, 2020, petitioner filed an amended petition together with a number of exhibits. (Dkt. 6.) Because it appeared from petitioner's submission that his sentence had not yet expired, and because petitioner claimed in his amended petition that the petition was not time-barred because he was actually innocent of the crimes of which he was convicted, the Court allowed this action to move forward. The briefing with respect to petitioner's amended petition is now complete and this matter is ripe for review.

## GROUNDS FOR RELIEF

Petitioner identifies two grounds for relief in his amended petition, both asserting that he was denied effective assistance of counsel at trial. Specifically, petitioner appears to claim that (1) counsel failed to adequately cross-examine T with respect to her testimony that her sister was in school at the time T was being molested, and (2) counsel failed to investigate the hours when petitioner's younger daughter was in school and to present evidence that petitioner was at work during the times the alleged abuse occurred. (Dkt. 6 at 5-7.)

## DISCUSSION

Respondent argues in his answer to petitioner's amended petition that petitioner failed to name the state officer having custody over him as the respondent to the petition, and that this defect deprives this Court of personal jurisdiction. (Dkt. 11 at 8-9.) Respondent requests that this Court dismiss petitioner's petition for lack of jurisdiction unless petitioner amends his petition within a

REPORT AND RECOMMENDATION
PAGE - 6

reasonable time to name a proper respondent. (*Id*. at 9.) Respondent further argues that even if petitioner were to cure this defect, his petition is still subject to dismissal because it is time-barred under 28 U.S.C. §2244(d). (*Id*. at 13-20.)

Lack of Personal Jurisdiction

A petitioner who is currently in custody under a state court judgment must name as the respondent the state officer having custody of him or her. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Typically, this person is the warden of the facility in which the petitioner is incarcerated. *Stanley v. California Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994). "Where the petitioner is on probation or parole, the proper respondent for a habeas corpus petition is the petitioner's probation or parole officer and the official in charge of the parole or probation agency or the state correctional agency." *Thomas v. Cate*, 715 F. supp. 2d 1012, 1018 n.2 (E.D. Cal. 2010) (citing *See Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996)). Failure to name the petitioner's custodian deprives federal courts of personal jurisdiction. *Id*.

Petitioner identified the Department of Corrections as the respondent in this action. Respondent asserts that because petitioner has been released from custody, and is currently being supervised on community custody, the correct respondent would be petitioner's supervising community corrections officer. (Dkt. 11 at 9.) Petitioner claims, without citation to any authority, that the Department of Corrections is the correct respondent. (Dkt. 23 at 1-2.) Petitioner appears to base this assertion on the fact that, pursuant to the judgment and sentence entered by the Whatcom County Superior Court in 2004, the Department of Corrections was responsible for the execution of petitioner's sentence. (*See id*.) Petitioner is incorrect.

The applicable rules and relevant case law make clear that a proper respondent in a federal

REPORT AND RECOMMENDATION
PAGE - 7

habeas case is a *person*, not an entity such as the Department of Corrections. While it would have been a relatively simple matter for petitioner to amend his petition to correct the error, particularly in light of the guidance provided in respondent's answer, petitioner declined to do so. Petitioner's amended petition is therefore subject to dismissal for failure to name a proper respondent.

## Statute of Limitations

Even assuming petitioner had named a proper respondent, or were to now attempt to amend his petition to correct this deficiency, petitioner's petition would still be subject to dismissal as it is clearly time-barred under the federal statute of limitations. Pursuant to 28 U.S.C. § 2244(d)(1), a one-year period of limitation applies to an application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court. The one-year limitation period generally begins to run from the date of the conclusion of direct review or "the expiration of the time for seeking such [direct] review," whichever is longer. 28 U.S.C. § 2244(d)(1)(A).

In this case, the period for direct review ended, at the latest, upon the expiration of the time for seeking review by the Washington Supreme Court of the Washington Court of Appeals' decision affirming petitioner's convictions. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The Court of Appeals issued its opinion affirming petitioner's judgment and sentence on May 16, 2005.[1] (*See* Dkt. 16, Ex. 2.) Petitioner had 30 days from that date to file a petition for review. *See* Rule 13.4(a), Washington Rules of Appellate Procedure. Because petitioner did not file a

---

[1] Petitioner asserts in one of his submissions that there was a second judgment and sentence which "was done in the wrong court" and which renders his petition timely. (Dkt. 23 at 3.) This appears to be a reference to Appendix F of petitioner's judgment and sentence, a document which establishes conditions of petitioner's community supervision but erroneously refers to the superior court for Benton County rather than the superior court for Whatcom County where petitioner was convicted. (*See* Dkt. 12, Ex. 5 at 13-15.) The Washington Department of Corrections (DOC) apparently made an attempt to correct this error in May 2004, shortly after petitioner's sentencing hearing, though it is unclear whether an amended Appendix F was ever entered into the record. (*See id.*, Ex. 6 at 4-7.) Petitioner makes no showing that a second judgment and sentence was ever entered or that the cited error, which was the subject of petitioner's second personal restraint proceeding, in any way impacted the timeliness of the instant habeas action.

REPORT AND RECOMMENDATION
PAGE - 8

petition seeking discretionary review by the Washington Supreme Court, his conviction became final on or about June 15, 2005.  28 U.S.C. § 2244(d)(1)(A).  Petitioner's one-year statute of limitations began to run the following day and expired one year later on June 16, 2006.  *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).

The one-year limitations period is tolled for any "properly filed" collateral state challenge to the state conviction.  28 U.S.C. § 2244(d)(2).  Though petitioner filed two personal restraint petitions in the state courts relating to the judgment and sentence challenged in this action, both were filed many years after the statute of limitations had already expired and, thus, the petitions did not act to toll the limitations period.  The statute of limitations governing federal habeas petitions is also subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631 (2010).  Petitioner does not, however, argue that he is entitled to equitable tolling in this matter.  Instead, petitioner asserts that his federal habeas action is not time-barred because he is actually innocent of the crimes of which he was convicted.  (*See* Dkt. 6 at 10; Dkt. 23 at 3-7.)

The Supreme Court has recognized an equitable exception to the statute of limitations for a credible showing of actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  However, the Supreme Court has cautioned that tenable actual innocence claims are rare.  *Id*.  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is demanding and rarely met).  In order to make a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented

REPORT AND RECOMMENDATION
PAGE - 9

at trial." *Schlup*, 513 U.S. at 324.

Petitioner's claim of actual innocence is based on his assertion that he was at work at the time the alleged offenses occurred and therefore could not have committed the charged crimes. (*See* Dkt. 6 at 11; Dkt. 23 at 3-7.).) Petitioner maintains that though he informed the local police department, the prosecutor, and his public defender that he had an alibi, no one investigated it. (*Id*.) Petitioner submitted with his amended petition documentation which he appears to believe supports his claim of actual innocence. Specifically, petitioner submitted a declaration from his brother stating that petitioner's regular work shift from late 1997 through 1998 was 6:00 a.m. to 3:00 p.m., and that petitioner "worked a tremendous amount of overtime." (*Id*., Ex. C.)

Petitioner also submitted a document prepared by the State of Washington Employment Security Department detailing his wages and total work hours from late 1997 through the end of 1999. (*Id*., Ex. D.) Finally, petitioner submitted his own statement claiming that regardless of what shift he worked for his employer during the years referenced in the Washington Employment Security Department document, it was impossible for him to have been at home during the times of the alleged crimes given that he lived over seventeen miles from his work. (*Id*., Ex. E.)

In addition to the materials submitted by petitioner in conjunction with his amended petition, the Court has also received a number of letters/affidavits from family members and friends of petitioner questioning the thoroughness of the investigation underlying petitioner's convictions as well as various aspects of the trial process.[2] (*See* Dkts. 14, 17, 21, 22, 25.) While

---

[2] On July 15, 2020, petitioner filed a document which he identified as a motion, but which appears to merely pose a question as to why the names of individuals who filed letters/affidavits on petitioner's behalf appear on the docket. (*See* Dkt. 18.) Documents submitted in an action pending before the Court automatically become a part of the Court record, which is public. While a litigant may, in certain circumstances, seek to have documents filed under seal, no such request was made with respect to the documents submitted on petitioner's behalf and, in any event, there appears no basis for sealing any of the submissions.

REPORT AND RECOMMENDATION
PAGE - 10

petitioner's submissions speak to his normal work hours, and to the frustration that no investigation of his purported alibi defense was undertaken either by law enforcement or his own attorney, none of the submissions demonstrate that petitioner was, in fact, at work rather than at home during the time his daughters testified he was sexually abusing them.

The crimes charged against petitioner spanned a period of over five years, from January 1997 through November 5, 2002, Petitioner's younger daughter, D, testified about repeated sexual abuse that occurred over a period of several years beginning when she was in the fourth grade. (Dkt. 12, Ex. 1 at 91-111.)  Petitioner's older daughter, T, who was three years older than her sister, testified about repeated sexual abuse that occurred over a period of several years beginning when she was in seventh grade. (*Id*., Ex. 1 at 202-216.)  The employment information provided by petitioner covers less than half of the period of time during which the alleged abuse occurred, and none of petitioner's documents is sufficiently specific to undermine the jury's verdict. In sum, petitioner has not demonstrated that in light of his proffered new evidence, no reasonable juror would have voted to find him guilty of the charged offenses.

Because petitioner filed his petition outside of the § 2254 statute of limitations period, and because petitioner has not demonstrated that he is entitled to any tolling of the limitations period or that he is exempt from the statute of limitations because of his "actual innocence," petitioner's amended petition is time-barred and must therefore be dismissed.

<u>Certificate of Appealability</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(3).  A

petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability in this matter.

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's amended petition for writ of habeas corpus (Dkt. 6), and this action, be dismissed with prejudice. This Court further recommends that petitioner's pending motions (Dkts. 16, 18, 19, 27) be denied as moot. Finally, this Court recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 13, 2020**.

DATED this 23rd day of October, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12